Penley Realty Corp. v. Commissioner. Vernon Avenue Realty Corp. v. Commissioner.
Penley Realty Corp. v. Commissioner
Docket Nos. 70944, 70945.
United States Tax Court
T.C. Memo 1960-193; 1960 Tax Ct. Memo LEXIS 94; 19 T.C.M. (CCH) 1005; T.C.M. (RIA) 60193; September 21, 1960
*94 Alexander M. Inselman, Esq., 261 Broadway, New York, N. Y., for the petitioners. William F. Chapman, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion Respondent determined the following deficiencies in income tax for the calendar year 1953: Penley Realty Corp
$4,500.00
Vernon Avenue Realty Corp.
494.11
The issue is whether the amounts of $18,000 and $2,400 paid by petitioners Penley Realty Corporation and Vernon Avenue Realty Corporation, respectively, to their officer-stockholders in 1953 constituted "reasonable" compensation for services rendered by them to petitioners within the meaning of Section 23(a)(1)(A), Internal Revenue Code of 1939. Findings of Fact Some of the facts have been stipulated, and, as stipulated, are incorporated herein by reference. Penley Realty Corporation (hereinafter referred to as Penley) is a corporation organized in 1947 under the laws of the State of New York. It was engaged in the business of buying, improving, operating and selling real property. It filed its corporate income tax return for the year 1953 with the director of internal revenue for the first district of New York. *95 Penley's stockholders have at all times been James Newell, Frederick Silva and Dominick Forte, each of whom owns five shares of capital stock of a total of 15 shares issued by the corporation representing a capital investment on its books of $13,930.34. Vernon Avenue Realty Corporation (hereinafter referred to as Vernon) is a corporation organized in 1947 under the laws of the State of New York. It engaged in the business of buying, operating and selling real property. It filed its corporate income tax return for the year 1953 with the director of internal revenue for the first district of New York. Vernon's stockholders have at all times been James Newell, Frederick Silva and Dominick Forte, each of whom owns an equal number of shares of its capital stock representing a capital investment on its books of $3,000. In April 1947, Frederick Silva entered into a contract for the purchase of premises at 53-02 - 37th Street, Long Island City, New York, for $7,000. On June 4, 1947, Silva assigned the contract to Penley and Penley acquired title paying $4,000 cash and executing its purchase money bond and mortgage for $3,000. On July 3, 1953, Penley sold premises 53-02 - 37th Street, *96 Long Island City, New York, for $16,500, taking back a purchase money mortgage for $7,000. On May 5, 1947, Silva entered into a contract to purchase premises 23-81 - 21st Street, Long Island City, New York, for $12,000, subject to a mortgage in the amount of $2,840. Penley acquired title thereto on June 30, 1947, after taking an assignment of the aforementioned contract from Silva. On May 17, 1948, Penley sold premises 23-81 - 21st Street, Long Island City, New York, for $16,000, taking back a purchase money mortgage in the amount of $10,000. On March 28, 1949, Penley purchased land at 56th Road and 48th Street, Long Island City, New York, for $4,000. 48th Street, Long Island City, New York, for $15,384.75. On May 25, 1949, Penley purchased the land and building at 116-120 King Street, Brooklyn, New York, for $50,000, paying $20,000 cash and executing a purchase money mortgage for $30,000. On July 16, 1951, Penley purchased for $29,000 in cash two adjoining buildings at 1084-86 and 1088-1090 Bedford Avenue, Brooklyn, New York. Each building had eight residential tenants. In addition, 1084-1086 Bedford Avenue had two store tenants. 1088-1090 Bedford had two stores occupied *97 by one tenant. On May 6, 1953, Penley obtained a mortgage loan of $14,000 from the East New York Savings Bank on premises 1084-1086 and 1088-1090 Bedford Avenue, Brooklyn, New York. In order to obtain the mortgage loan, Penley had to and did deposit with the bank the sum of $500 to be held in escrow until the removal of a notice of violation filed against the building. Penley also had to deposit an additional $600 in escrow with the bank to assure painting of the exterior parts of the building. On January 12, 1953, Penley sold the premises at 1084-1086 and 1088-1090 Bedford Avenue, Brooklyn, New York, for $37,500, taking back a purchase money second mortgage for $18,493.04. In 1947 Dominick Forte purchased a sixfamily dwelling at 5612 Starr Avenue, Long Island City, New York, on behalf of himself, Newell and Silva. In February 1952, Forte executed a deed transferring title to this property to Penley. On November 15, 1951, Penley bid in at an auction sale conducted by the City of New York premises at 134 Franklin Street, Brooklyn, New York, for $4,025. Penley took title thereto on June 4, 1952, and resold the property in July 1952 for $4,500. On July 30, 1952, Penley entered *98 into a written contract with Terminal Metal Products Corp., the tenant in possession of premises 116-118 King Street, Brooklyn, New York, to permit Terminal Metal Products Corp. to enter into a contract with Commercial Metals Company for the purchase of certain property on Review Avenue, Long Island City, New York. After the written contract between Penley and Terminal Metal Products Corp. was signed, Terminal Metal Products Corp. did not acquire title to the Review Avenue property and remained in possession of the King Street property as a tenant thereof. On or about March 23, 1949, Penley acquired by purchase from the City of New York for the sum of $3,399.17 assignments of tax liens on the following property, all located in the Borough of Queens, City of New York: Lien No.
Sec.
Block
Lot
96857
3
362
31
96858
3
362
32
96859
3
362
33
On or about May 23, 1949, Penley assigned the aforesaid tax liens to John E. Sorenson. According to the books of Penley its capital, loans payable to officer-stockholders, officers' salaries and interest on officers' loans for each of the years 1947 through 1953, were as follows: Loans Payable
to Officer-
Stockholders
Officers'
Year
Capital Stock
December 31
Salaries
Interest
1947
$13,930.34
None
None
None
1948
13,930.34
$ 1,200.00
$ 3,600.00
None
1949
13,930.34
21,703.95
900.00
None
1950
13,930.34
22,902.05
3,000.00
None
1951
13,930.34
45,678.24
3,000.00
None
1952
13,930.34
30,507.19
12,000.00
None
1953
13,930.34
17,157.19
18,000.00
$1,800.00
*99 The amounts paid by Penley as salaries to its officers in each of the years 1947 to 1953, inclusive, were as follows: Newell
Forte
Silva
Total
1947
None
None
None
None
1948
$1,200.00
$1,200.00
$1,200.00
$ 3,600.00
1949
300.00
300.00
300.00
900.00
1950
1,000.00
1,000.00
1,000.00
3,000.00
1951
1,000.00
1,000.00
1,000.00
3,000.00
1952
4,000.00
4,000.00
4,000.00
12,000.00
1953
6,000.00
6,000.00
6,000.00
18,000.00
The following is a schedule showing gross income, as reported by Penley in its Federal income tax returns for 1947 to 1953, inclusive, officers' salaries, and net income after officers' salaries: Net Income
(Loss) after
Gross In-
Officers'
Officers'
Year
come
Salaries
Salaries
1947
$ 2,585.00
None
$470.28
1948
6,979.80
$ 3,600.00
648.50
1949
5,384.62
900.00
63.51
1950
8,198.97
3,000.00
(256.17)
1951
11,958.40
3,000.00
185.30
1952
27,252.66
12,000.00
688.13
1953
27,847.68
18,000.00
179.97
In September 1949 Vernon acquired, by purchase, title to premises at 572 Morgan Avenue, Brooklyn, New York. The purchase price for the acquired property *100 was $7,031.25 of which the amount of $900 was paid in cash and the balance was represented by a mortgage held by the Greenpoint Savings Bank in the sum of $6,131.25. This was the first purchase of realty by Vernon subsequent to the date of its incorporation. On January 5, 1950, Vernon purchased premises at 154 Grattan Street, Brooklyn, New York, for a purchase price of $5,000. On October 2, 1950, Vernon purchased premises at 56-18 - 46th Street, Laurel Hill, Queens, New York, for $2,100. On January 30, 1953, Vernon sold premises at 572 Morgan Avenue and 154 Grattan Street for a total sales price of $13,500. The sale was subject to a mortgage on 572 Morgan Avenue held by Greenpoint Savings Bank, on which there was then a balance owing of $5,156.25. Vernon took back a second mortgage on the property at 572 Morgan Avenue in the amount of $1,343.75, and a purchase money mortgage on the property at 154 Grattan Street in the sum of $2,000, receiving the balance of $5,000 in cash. Following is a schedule taken from the books of Vernon, showing the capital, loans payable to officer-stockholders, officers' salaries and interest on officers' loans for each of the years 1950 to 1953, inclusive: *101 Loans Payable
to Officer-
Stock-
Capital
holders
Officers'
Year
Stock
Dec. 31
Salaries
Interest
1950
$3,000.00
$4,455.95
$1,300.00
None
1951
3,000.00
4,788.45
800.00
None
1952
3,000.00
4,372.12
2,400.00
None
1953
3,000.00
4,036.12
2,400.00
None
The amounts paid by Vernon as salaries to its officers in each of the years 1950 to 1953 were as follows: Officers' Salaries
Newell
Forte
Silva
Total
1950
$300.00
$700.00
$300.00
$1,300.00
1951
400.00
None
400.00
800.00
1952
800.00
800.00
800.00
2,400.00
1953
800.00
800.00
800.00
2,400.00 No salaries were paid to the officers prior to 1950. The gross income, officers' salaries, and net income after officers' salaries, as reported by Vernon in its Federal income tax returns for the years 1950 to 1953, were as follows: Net Income
Gross
Officers'
(Loss) after
Year
Income
Salaries
Officers' Salaries
1950
$4,189.93
$1,300.00
$ 57.46
1951
4,084.50
800.00
(92.63)
1952
5,556.06
2,400.00
121.46
1953
3,185.68
2,400.00
183.33
The following schedule shows the amounts paid *102 to James Newell in the years 1947 through 1953, by various corporations with which he was connected: Salary
Earnings
1947
1948
1949
1950
1951
1952
1953
Total
Penley Realty
0
$1200
$ 300
$1000
$1000
$4000
$ 6000
$13500
Vernon Ave.
0
300
400
800
800
2300
Realty
49th Ave.
2000
160
150
250
900
8000
11460
Corp.
Newell-Silva
370.29
370.29
(Partnership)
American
0
1550
2350
1000
800
1323.48
2816.67
9840.15
Sawdust Corp.
Newell Sawdust
$4500
3500
1800
250
500
0
10550
& Supply Corp.
Totals
$4500
$8250
$4610
$2450
$2700
$7523.48
$17986.96
$48020.44
The following schedule shows the amounts paid to Fred Silva in the years 1947 through 1953, by various corporations with which he was connected: Salary
Earnings
1947
1948
1949
1950
1951
1952
1953
Total
Penley Realty
0
$1200
$ 300
$1000
$1000
$4000
$ 6000
$13500
Vernon Ave.
0
300
400
800
800
2300
Realty
49th Ave. Corp
2000
160
150
250
900
8000
11460
20th Ave.
0
0
2600
2600
Corp.
Newell-Silva
370.30
370.30
(Partnership)
American
0
1550
2350
1000
800
1323.48
2816.67
9840.15
Sawdust Corp.
Newell Sawdust
$4500
3500
1800
250
500
0
10550
& Supply Corp.
Totals
$4500
8250
$4610
$2450
$2700
$7523.48
$20586.97
$50620.45
*103 The following schedule shows the amounts paid to Dominick Forte in the years 1947 through 1953, by various corporations with which he was connected: Salary Earnings
1947
1948
1949
1950
1951
1952
1953
Total
Penley
0
$1,200
$ 300
$1,000
$1,000
$4,000
$ 6,000
$13,500
Realty
Vernon
0
700
0
800
800
2,300
Ave.
Realty
20th Ave.
0
0
2,600
2,600
Corp.
American
Sawdust
Corp.
0
1,550
2,350
1,000
800
1,323.48
3,635.17
10,658.65
Totals
0
$2,750
$2,650
$2,700
$1,800
$6,123.48
$13,035.17
$29,058.65
The stock of the Newell Sawdust and Supply Corporation was owned by Newell and Silva. It owned some rental property. Prior to 1947, Newell, Silva and Forte had engaged in the sawdust business for approximately 20 years. After the 5302 - 37th Street property was purchased by Penley in 1947, they made repairs and improvements on the shed and two one-car garages on the property, laid a concrete floor, and rented the property to the American Sawdust Corporation, the stock of which was owned equally by them. Although one purpose of the repairs and improvements was to rehabilitate the property *104 for eventual sale, the American Sawdust Corporation would not have rented the property if they had not been made. A fire damaged this property in 1950 and Newell, Silva and Forte worked seven hours a day for a period of two or three weeks replacing beams and siding and making other repairs. They spent approximately three weeks making repairs and improvements on the King Street property after it was purchased by Penley in 1949; about 10 days cleaning, repairing and remodeling the 21st Street property in 1947 after a club occupying part of the property was removed as a tenant; three days painting the fire escape and making repairs on the Bedford Avenue property; and several days constructing a fence around the land purchased by Penley at 56th Road and 48th Street. During the years 1947 to 1953, Newell, Silva and Forte, or one or two of them, looked at many properties offered for sale with the objective of determining whether they would be desirable investments. Many of these properties were rejected for various reasons and others were purchased either by Penley, Vernon, the 49th Street Corporation, the Newell-Silva (partnership), Forte, Silva and another individual named Weiss, or *105 Forte individually. Other activities of Newell, Silva and Forte during the period 1947 to 1953 included attempting to find purchasers for properties Penley and Vernon owned during those years; entering into negotiations for the sale of such properties when a prospective purchaser was found; making loans to petitioners; keeping records of income and expenses which were used by an accountant in making entries in books maintained by him for petitioners; showing properties to prospective tenants; negotiating leases; collecting rents; making some repairs and improvements; and rendering some miscellaneous services, such as arranging for removal of an undesirable tenant, filling an "iron fireman" and removing ashes, putting out and taking in garbage cans, and repairing faucets, electric plugs, etc., for tenants. During the year 1953, Newell, Silva and Forte continued their efforts to find properties which would be desirable investments, and showed properties owned by Penley and Vernon to prospective buyers. There were no formal meetings of the board of directors of petitioners. When petitioners were first organized in 1947, Newell, Silva and Forte discussed the question of salaries *106 and had an understanding that in the years petitioners "made money" they would "get it in salary". In the return of Penley for the year 1953, it claimed the following deductions for compensation paid its officers: James Newell, Pres.
$ 6,000
Fred M. Silva, Treas.
6,000
Dominick Forte, Secy.
6,000
Total
$18,000 The respondent determined that the $18,000 claimed for officers' compensation was excessive and unreasonable to the extent of $15,000, and disallowed the deduction of that amount. In the return of Vernon for the year 1953, it claimed the following deductions for compensation paid its officers: James Newell, Pres.
$ 800
Dominick Forte, Treas.
800
Fred M. Silva, Secy.
800
Total
$2,400 The respondent determined that the $2,400 claimed for officers' compensation was excessive and unreasonable to the extent of $1,900, and disallowed the deduction of this amount. Reasonable compensation for the year 1953 for services rendered by Newell, Silva and Forte to Penley was $10,500 and to Vernon $500. Opinion RAUM, Judge: Petitioners contend that the salaries paid by them to their officer-stockholders during the year 1953 were intended *107 to compensate them not only for the services rendered by them in 1953, but for the uncompensated or inadequately compensated services rendered in prior years, and that viewed in the light of the services rendered during the years 1947 through 1953, the compensation was fair and reasonable and deductions claimed therefor should have been allowed by respondent. The question of what constitutes reasonable compensation is essentially one of fact. Petitioners had the burden of proving the reasonableness of amounts paid and deducted as compensation for officers in their 1953 returns. The payments made by them to their office-stockholders during 1953 were in proportion to stockholdings. While they should not be disallowed merely because of this fact, they must be scrutinized to ascertain whether they represented, in part, distributions of profits in the guise of compensation. At all times material herein the stock of both Penley and Vernon was owned by Newell, Silva and Forte in equal proportions. During the years 1947 through 1953 neither corporation paid a dividend, and the amounts paid as salaries by each of them to their three officer-stockholders were based upon earnings. 1. As *108 to Penley, the evidence shows considerable activity by its officers during the period 1947-1953, including the year 1953. Many of their services required the expenditure of considerable time and effort, and we are satisfied that the officers were not fully compensated for their services in the years prior to 1953, a proper consideration, among others, to be taken into account in determining the reasonableness of the 1953 salaries. We are convinced by the evidence that the Commissioner erred in allowing only $3,000 in toto as reasonable salary deductions for the three officers for 1953. Although we agree with him that the $18,000 claimed on the return was unreasonable, it is our best judgment and we have found as a fact that reasonable compensation for 1953 for the services rendered by the three officers was $10,500. The determination of the Commissioner is therefore approved only to the extent that he disallowed the deduction in excess of that amount. 2. As to Vernon, the evidence shows that the services rendered by the officers were minimal. Even though the amount allowed by the Commissioner was small, we cannot find on this record that his determination was in error. We therefore *109 sustain the Commissioner and hold that the $2,400 deduction claimed for officers' salaries was excessive and unreasonable to the extent of $1,900. Decisions will be entered under Rule 50.